No. 89,106

In the Matter of VICTOR S. NELSON, *Respondent*.

64 P.3d 413

Opinion filed March 7, 2003.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was on the formal complaint for petitioner.

*Daniel J. Sevart*, of Sevart & Sevart, of Wichita, argued the cause for respondent, and *Victor S. Nelson*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Victor S. Nelson, an attorney admitted to the practice of law in Kansas, whose last known business address is Wichita, Kansas.

Formal complaints were filed against Nelson, and the matter proceeded to hearing. A formal hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The panel established the following facts by clear and convincing evidence:

Complaint of Charolyn Blount (DA7821)

Nelson was retained to transfer the title of a residence following the intestate death of Charolyn Blount's husband. Nelson consistently failed to contact his client or return her calls, and she reached him only three times in 21 months. Nelson never accomplished the transfer of title. He did refund the retainer fee plus interest.

Complaint of Thomas L. Porsch, Jr. (DA8066)

Nelson was retained in a post-divorce matter. The court ruled in his client's favor, and Nelson was to prepare the journal entries. When his client was unsuccessful in getting Nelson to reply to his correspondence and telephone calls, he reported the matter to the Disciplinary Administrator. The Disciplinary Administrator contacted Nelson, who failed to respond to the Disciplinary Administrator's letter. Nelson never provided a written response to his client's complaints.

## Complaint of James Gawith (DA8100)

Nelson was employed to prepare a Chapter 13 bankruptcy case. Nelson did not return telephone calls. Eventually, a written complaint was filed with the Disciplinary Administrator's office and a written response was requested. Nelson failed to respond to the Disciplinary Administrator's letter. A written response was never furnished.

## Complaint of Marvin Hendrickson (DA8136)

Nelson was employed to file a Chapter 7 bankruptcy case. During the next year, the client called Nelson approximately 12 times, but Nelson failed to file the bankruptcy. A complaint was filed with the Disciplinary Administrator's office, and a written response was requested of Nelson. Nelson failed to respond to the Disciplinary Administrator's letter.

After waiting 14 months for Nelson to file the action in bankruptcy, the client contacted another attorney, who demanded a refund of the unearned retainer. Nelson failed to refund the retainer fee. Nelson never provided a written response to his client's complaint. Eventually, Nelson refunded the unearned fees and returned the client's file to his new attorney.

## Complaints of Loretta Johnson and Eric Copes (DA8222)

Nelson was retained by Loretta Johnson in a bankruptcy matter. He was also retained by her brother Eric Copes to probate the estates of his parents, and received a retainer fee. Again, Nelson failed to return telephone calls. One of the estates still remains open as of this date.

## Complaint of Dean O. Summers (DA8273)
## Complaint of Eugene W. Human (DA8319)

Again, these complaints both involved lack of diligence and adequate communication. In addition, Nelson informed Summers that the retainer would be $750 and then billed him for $1,000.

Nelson followed his prior practice of not responding to written requests or returning telephone calls.

Complaint of Gary Nelson and Bill Brier (DA8429)

Nelson received a retainer fee to write a letter in a contract dispute. He never wrote the letter. He received the retainer fee in two separate checks. When he refunded one of them, the check bounced. The other check was placed in his operating account as opposed to his trust account.

The hearing panel concluded that Nelson violated Kansas Rules of Professional Conduct (KRPC) 1.3 (2001 Kan. Ct. R. Annot. 323) (diligence); KRPC 1.4 (2001 Kan. Ct. R. Annot. 334) (communication); KRPC 1.16(d) (2001 Kan. Ct. R. Annot. 387) (declining or terminating representation); KRPC 3.2 (2001 Kan. Ct. R. Annot. 398) (expediting litigation); KRPC 8.1 (2001 Kan. Ct. R. Annot. 433) (bar admission and disciplinary matters); Kansas Supreme Court Rule 207 (2001 Kan. Ct. R. Annot. 246) (duties of the bar and judiciary); and Kansas Supreme Court Rule 211(b) (2001 Kan. Ct. R. Annot. 259) (formal hearings).

Based upon clear and convincing evidence, a unanimous hearing panel made the following conclusions of law.

"1. Based upon the above findings of fact, the Hearing Panel concludes, as a matter of law, that the Respondent violated KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 1.15, KRPC 1.16, KRPC 8.1, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211(b), as follows:

"2. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. Because the Respondent failed to act with reasonable diligence and promptness in representing his clients, the Hearing Panel concludes that the Respondent violated KRPC 1.3 as follows:

a. By failing to transfer the title of the real property to Ms. Blount's name, the Respondent failed to act with reasonable diligence and promptness.

b. The Respondent failed to timely prepare and file the journal entries in Mr. Porsch's domestic relations case.

c. In Mr. Hendrickson's case, the Respondent failed to finalize and file the bankruptcy pleadings.

d. By failing to timely prepare and file the necessary estate pleadings, for which he was retained by Mr. Copes, the Respondent failed to diligently represent Mr. Copes.

"3. KRPC 1.4 provides:

'(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

'(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decision[s] regarding the representation.'

In this case, the Hearing Panel concludes that the Respondent violated both KRPC 1.4(a) and KRPC 1.4(b).

a. The Respondent violated KRPC 1.4(a) when he repeatedly failed to return Ms. Blount's telephone calls.

b. By failing to clearly communicate to Ms. Johnson the scope of his representation, the Respondent violated KRPC 1.4(b).

c. By failing to return Mr. Copes' telephone calls and by failing to keep appointments with Mr. Copes, the Respondent violated KRPC 1.4(a).

"4. Lawyers must safeguard their clients' property. KRPC 1.15 details a lawyer's responsibility in this regard, in pertinent part, as follows:

. . . .

'(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

. . . .

'(d) Preserving identity of funds and property of a client.

(1) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable accounts maintained in the State of Kansas with a federal or state chartered or licensed financial institution and insured by an agency of the federal or state government, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows: . . . .'

By failing to promptly deliver to Mr. Hendrickson the unearned fees, the Respondent violated KRPC 1.15(b). Additionally, by failing to deposit the $1,000.00 retainer, paid by Ms. Blount, into a trust account, the Respondent violated KRPC 1.15(d)(1). Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.15.

"5. KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance

payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

In March, 2001, Mr. Hendrickson fired the Respondent and hired C. Richard Comfort. Mr. Comfort requested that the Respondent refund Mr. Hendrickson's fee and forward Mr. Hendrickson's file. The Respondent failed to 'surrender' the file and refund the unearned fee as required by KRPC 1.16(d). Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.16(d).

"6.  Lawyers must expedite litigation, consistent with the interests of their clients. *See* KRPC 3.2. The Respondent failed to expedite the probate of Mr. Copes' father's estate. Because the Respondent failed to expedite the probate of Mr. Copes' father's estate, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

"7.  KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) require lawyers to respond to requests for information in attorney disciplinary investigations. KRPC 8.1(b) provides:

'[A] lawyer . . . in connection with a disciplinary matter, shall not: . . . (b). . . knowingly fail to respond to a lawful demand for information from [a] disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.'

"Kan. Sup. Ct. R. 207(b) provides:

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

In this case, the Respondent failed to provide written responses to the initial complaints filed by Mr. Porsch, Mr. Gawith, and Mr. Hendrickson, as requested by the Disciplinary Administrator and the Disciplinary Investigator. Additionally, the Respondent failed to timely provide written responses to the initial complaints filed by Mr. Summers and Mr. Human. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

"8.  Kan. Sup. Ct. R. 211(b) provides as follows:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

In this case, three Formal Complaints were filed against the Respondent. Because the Respondent filed his Answer to Formal Complaint DA 7821 thirteen months after it was due, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

"ABA Standard for Imposing Lawyer Sanctions

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his clients to provide diligent representation and reasonable communication. The Respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"*Mental State.* The Respondent knowingly violated his duties.    "*Injury.* The Respondent's clients suffered actual injury as a result of the misconduct. Additionally, the legal profession suffered by the Respondent's misconduct.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Pattern of Misconduct. This matter includes the complaints of eight clients. In each case, the Respondent failed to provide diligent representation and adequate communication. Because the Respondent repeatedly engaged in the same type of misconduct, the Respondent engaged in a pattern of misconduct. The Respondent also repeatedly failed to cooperate in the disciplinary investigations.

"Multiple Offenses. The Respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 1.16, KRPC 3.2, KRPC 8.1, Kan. Sup. Ct. R. 207(b), and Kan. Sup. Ct. R. 211(b). As such, the Respondent committed multiple offenses.

"Bad Faith Obstruction. The Respondent failed to respond to requests for information made by the Disciplinary Administrator and the disciplinary investigator regarding the complaints filed by Mr. Porsch, Mr. Gawith, and Mr. Hendrickson. Additionally, the Respondent did not timely provide information to the Disciplinary Administrator and the Disciplinary Investigator regarding the complaints filed by Mr. Summers and Mr. Human.

"Refusal to Acknowledge Wrongful Nature of Conduct. The Respondent took responsibility for only a small portion of the misconduct committed.

"Vulnerability of Victim. Mr. Copes appears to be an intelligent, though unsophisticated, individual who counted on the Respondent to guide him through unfamiliar territory. He was particularly vulnerable to the Respondent's misconduct.

"Substantial Experience in the Practice of Law. The Respondent was admitted to the practice of law in the state of Kansas in 1984. At the time the misconduct

began, the Respondent had been practicing law for fourteen years. The Hearing Panel concludes that the Respondent has substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstance present:

"Absence of Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Absence of a Dishonest or Selfish Motive. The Respondent's failure to tend to his client's needs was not prompted by any desire for self-gain.

"Personal or Emotional Problems. The flurry of complaints against the Respondent were filed during the same time period and a time when his life, both personally and professionally, were in complete upheaval. The stress of a hotly contested custody battle, for example, diverted the Respondent's attention to his own problems and away from the problems of his clients.

"Physical or Mental Impairment. At about that same time the complaints were filed against the Respondent, he was diagnosed as suffering from serious depression. The Respondent has also been diagnosed as having Attention Deficit Disorder ('ADD') with hyperactivity. Both have affected his ability to stay 'on task.'

"Interim Rehabilitation. Since being diagnosed with depression and ADD, the Respondent has sought, and continues to receive, counseling from a qualified therapist. He also takes prescription medication to alleviate the symptoms of both conditions. Finally, many of the domestic issues which the Respondent previously faced have been resolved.

"Remorse. The Respondent did express remorse for some of his actions and the problems they caused.

### "Recommendation

"The Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of one year. However, the Hearing Panel recommends that the Kansas Supreme Court suspend the imposition of the discipline and place the Respondent on probation for a period of two years. If, at the end of the two year probationary term, the Disciplinary Administrator and the Practice Supervisor believe that the Respondent could benefit from an additional year of probation, the Hearing Panel recommends that the Disciplinary Administrator file a motion to extend probation with the Kansas Supreme Court. The Hearing Panel recommends that the Respondent's probation include the following terms and conditions:

"1. *Practice Supervision.* The Respondent's practice will be supervised by [David L. Hiebert, of Gragert, Hiebert & Gray, 245 N. Waco Street, Suite 200, Wichita, Kansas, 67202-1112], a licensed Kansas attorney ('Practice Supervisor'). The Respondent shall allow the Practice Supervisor access to his client files, calendar, and trust account records. The Respondent shall comply with any requests made by the Practice Supervisor. During the first six months of probation, the Respondent shall meet with the Practice Supervisor weekly. During the following eighteen months of probation, the Respondent shall meet with the Practice Supervisor monthly, or more frequently if directed by the Practice Supervisor. During the first six months of probation, the Practice Supervisor shall prepare a monthly report to the Disciplinary Administrator regarding the Respondent's status on probation. During the following eighteen months of probation, the Practice Supervisor shall prepare and forward quarterly reports to the Disciplinary Administrator regarding the Respondent's status on probation.

"2. *Psychological Treatment.* The Respondent shall continue his treatment for depression and ADD and hyperactivity disorder with Ted Moeller, Ph.D, 240 N. Rock Road, Suite 303, Wichita, Kansas 67206, . . . throughout the period of supervised probation unless, in Dr. Moeller's opinion, continued treatment is no longer necessary. Dr. Moeller shall notify the Disciplinary Administrator in the event that the Respondent discontinues treatment against the recommendation of Dr. Moeller during the probationary period. The Respondent shall immediately provide Dr. Moeller with an appropriate release of information to allow Dr. Moeller to provide such information to the Disciplinary Administrator and the Respondent's Practice Supervisor. Dr. Moeller shall immediately file a report with the Disciplinary Administrator and the Practice Supervisor. The report shall include a complete diagnosis, the Respondent's current treatment program, a detailed discussion of the Respondent's compliance with the current treatment program, and a complete prognosis. Thereafter, Dr. Moeller shall provide quarterly reports to the Disciplinary Administrator and the Practice Supervisor throughout the period of probation.

"3. *Medication.* The Respondent is currently taking prescription medication under the supervision of qualified, licensed medical doctor. The Respondent shall continue to have regular contact with a qualified medical professional regarding his medication. The Respondent shall follow the qualified medical professional's recommendation regarding any medications prescribed.

"4. *Audits.* Within thirty (30) days of the date of this report, the Practice Supervisor shall conduct an initial audit of the Respondent's files. Six months after the completion of the first audit, the Practice Supervisor shall conduct a second audit. At the completion of the supervised probation, the Practice Supervisor shall

conduct a third audit. After each audit, the Practice Supervisor shall make a report regarding the audit. If the Practice Supervisor discovers any deficiencies in the handling of a matter or any possible violations of the Kansas Rules of Professional Conduct, the Practice Supervisor shall include such information in his report. The Practice Supervisor shall provide the Disciplinary Administrator and the Respondent with a copy of each audit report. The Respondent shall follow all recommendations and correct all deficiencies noted in the Practice Supervisor's periodic audit reports. The Practice Supervisor may conduct additional audits if, in his opinion, additional audits would be helpful or necessary to ensure the Respondent's compliance with the terms and conditions of probation.

"5. *Office Procedures*. Within ten days . . ., the Respondent shall file with the Disciplinary Administrator and furnish to the Practice Supervisor, a copy of the Respondent's written office procedures designed to monitor the status, deadlines, and court appearances of all matters in which the Respondent has undertaken representation. The Respondent shall modify those procedures if directed to do so by the Disciplinary Administrator or by the Practice Supervisor. The Respondent shall follow the written office procedures.

"6. *Continued Cooperation*. The Respondent shall cooperate with the Disciplinary Administrator and any disciplinary investigators. If the Disciplinary Administrator or any disciplinary investigator requests any information, the Respondent shall provide such information within the time limits set by the Disciplinary Administrator or disciplinary investigator, subject to any written extensions of time granted by the Disciplinary Administrator or disciplinary investigator. Should the Respondent fail to timely provide any information requested by the Disciplinary Administrator or any investigator, as required by Kan. Sup. Ct. R. 207, the Respondent's probation shall be immediately revoked.

"7. *Professional Liability Insurance*. The Respondent shall immediately obtain professional liability insurance. If the Respondent has not obtained professional liability insurance within thirty days of the date of this [order], the Respondent shall contact the Disciplinary Administrator and the Practice Supervisor and advise them of the efforts he has made toward obtaining professional liability insurance. Additionally, until the Respondent has actually obtained professional liability insurance, then every thirty days thereafter, the Respondent shall contact the Disciplinary Administrator and the Practice Supervisor and advise them of the his current efforts toward obtaining professional liability insurance. As soon as the Respondent has obtained professional liability insurance, the Respondent shall provide evidence of insurance and proof of premium payment to the Disciplinary Administrator and the Practice Supervisor. The Respondent shall maintain professional liability insurance throughout the period of probation.

"8. *Additional Violations.* The Respondent shall not violate the terms of the probation, the Kansas Supreme Court rules, or the Kansas Rules of Professional Conduct. In the event that the Respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the Respondent shall immediately report such violation to the Disciplinary Administrator. The Disciplinary Administrator shall take immediate action directing the Respondent to show cause why the probation should not be revoked."

A minority of the court would suspend Respondent from the practice of law. However, the majority accepts the panel's findings, conclusion, and recommended discipline.

IT IS THEREFORE ORDERED that imposition of discipline against Victor S. Nelson be suspended and that he be placed on probation for a period of 2 years from the date of this order and on the terms and conditions set forth in the probation and supervision plan, subject to the following:

1. David L. Hiebert will supervise Nelson's probation and practice for a period of 2 years from this date.

2. Hiebert will be acting as an officer and an agent of the court while supervising Nelson's probation and monitoring his legal practice.

3. Hiebert shall be afforded all immunities granted by Supreme Court Rule 223 (2002 Kan. Ct. R. Annot. 299) during the course of his activities as directed by this order.

4. Nelson shall immediately obtain professional liability insurance.

IT IS FURTHER ORDERED that Victor S. Nelson shall not violate any Kansas Rules of Professional Conduct.

IT IS FURTHER ORDERED that Victor S. Nelson shall pay restitution to the Client Protection Fund for the Eric D. Copes claim in the amount of $1,000 within 2 years of the date of this order.

IT IS FURTHER ORDERED that in the event Victor S. Nelson fails to abide by the conditions set out herein, he shall cause orders to issue to him, and this court shall take whatever disciplinary action

it deems just and proper, including disbarment, without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports, and that the costs of the proceeding shall be assessed to Victor S. Nelson.